# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

**RIDGECREST REALTY L L C**  CASE NO. 3:20-CV-01351

**VERSUS**  JUDGE TERRY A. DOUGHTY

**GRAPHIC PACKAGING INTERNATIONAL L L C**  MAG. JUDGE KAYLA D. MCCLUSKY

## MEMORANDUM RULING

Pending before the Court is a Motion for Partial Summary Judgment Seeking the Dismissal of any Tort Claim as Prescribed [Doc. No. 107] filed by Third-Party Defendant Monroe Warehouse Company, LLC ("MWC"). Defendant Graphic Packaging International, LLC ("GPI") filed a response in opposition [Doc. No. 113], and MWC filed a reply to the response [Doc. No. 118].

For the reasons set forth herein, MWC's Motion is **GRANTED**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

In 2011, GPI and Plaintiff Ridgecrest Realty, LLC ("Ridgecrest"), owner of the Chauvin Warehouse in West Monroe, entered into a short-term lease for the use of the Chauvin Warehouse.[1] GPI began occupying the Chauvin Warehouse in early 2012.[2] On August 1, 2013, Ridgecrest and GPI entered into a "Warehouse Lease Agreement" for the lease of the Chauvin Warehouse, which replaced the short-term lease.[3] The initial term of the lease was for six years, ending on July 31, 2016.[4] The lease had a renewal option of three years, which was evidently executed by GPI,

---

[1] [Doc. No. 73-1]
[2] [Id.]
[3] [Id.]
[4] [Id.]

resulting in the last day of the lease being July 31, 2019.[5] GPI vacated the Chauvin Warehouse during March 2019.[6]

During the time of the above-described lease, GPI entered into an agreement with MWC to provide services to GPI at the Chauvin Warehouse.[7] MWC would unload product from delivery trucks at the warehouse, store the product in the Chauvin Warehouse, keep an inventory of the product stored, and handle the paperwork for each shipment of product delivered to and sent from the Chauvin Warehouse.[8] To be paid for the services MWC provided to GPI, MWC would send invoices to GPI. GPI needed the purchase order ("PO") number(s) on the invoices to pay MWC. The POs are the source of the dispute between GPI and MWC. At issue is that each PO contained indemnity and hold harmless language, which would require MWC to indemnify GPI for all losses, damages, injuries, and expenses (including legal fees and expenses) out of the performance of services conducted by MWC for GPI at the Chauvin Warehouse.

On September 11, 2020, Ridgecrest, owner of Chauvin Warehouse, filed a Petition for Damages[9] against GPI for damages to the Chauvin Warehouse facility allegedly totaling $626,038.00. The Petition for Damages was originally filed in the 4th Judicial District Court, Parish of Ouachita, Louisiana. The matter was properly removed to this Court on October 19, 2020, on the basis of diversity jurisdiction.[10]

On November 9, 2020, GPI filed a Third-Party Complaint against MWC, alleging that in the event GPI is liable to Ridgecrest, MWC was liable to GPI for indemnification.[11] GPI alleged

---

[5] [Id.]
[6] [Doc. No. 76-1]
[7] [Id.]
[8] [Id.]
[9] [Doc. No. 1-1]
[10] [Doc. No. 1]
[11] [Doc. No. 9]

2

MWC would be liable to GPI under two theories: (1) contractual liability under the terms of the POs; and (2) liability in tort for MWC causing damage to Chauvin Warehouse.

In the instant Motion, MWC argues that delictual claims in Louisiana are subject to a one-year prescriptive period, which begins when the owner of the property acquires or should have acquired knowledge of the damage. It states that motions for summary judgment are appropriate to address the issue of prescription in federal court. MWC further argues that neither Ridgecrest nor GPI filed suit within one year of acquiring knowledge of the alleged damages. It asserts that the allegations in the petition show that the suit was filed more than one year after the lease termination and the alleged damage occurred. MWC presents evidence, including a demand letter and email communications, to demonstrate that both Ridgecrest and GPI were aware of the damages to the warehouse and MWC's involvement by August 2019, at the latest. However, neither party filed suit within a year. Ridgecrest filed its breach of contract claim in September 2020, while Graphic filed its third-party demand in November 2020. Therefore, MWC concludes that any potential tort claim related to the damage to the warehouse is untimely and should be dismissed as a matter of law.

In response, GPI agrees that the one-year prescriptive period applies to tort claims but disagrees with MWC's assertion that prescription for tort indemnity claims starts at the knowledge of the claim. GPI argues that the prescriptive period for tort indemnity claims starts when the indemnity claimant suffers a loss, such as payment of the underlying claim or settlement. Thus, GPI contends that its tort indemnity claim against MWC has not accrued, and prescription has not begun.

MWC replies that it is not seeking dismissal of any breach of contract or indemnity cause of action. Rather, MWC's present motion seeks only the dismissal of any underlying tort claim that was brought or which could have been brought by either Ridgecrest or GPI.

## II.  LAW AND ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible

4

inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (*quoting Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322–23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### B. Analysis

In Louisiana, delictual claims are subject to a one-year prescriptive period, as per Louisiana Civil Code Article 3492. In cases involving damage to immovable property, the prescriptive period begins to run from the day the owner of the property acquires, or should have acquired, knowledge of the damage, according to Louisiana Civil Code Article 3493. The one-year prescriptive period applicable to delictual actions concerning damages to immovable property also applies to third parties who are not in privity with the landowner. This interpretation was affirmed by the United States Court of Appeals for the Fifth Circuit in *Terrebonne Par. Sch. Bd. v. Columbia Gulf*

5

*Transmission Co.*, 290 F.3d 303, 319 (5th Cir. 2002), where the court stated, "Nothing in this code article restricts its application to third parties not in privity with the landowner." Furthermore, under Louisiana Civil Code Article 462, an immovable property consists of a tract of land with its component parts, which include permanent structures like the Chauvin Warehouse. The definition of immovable property provided in Article 462 explicitly encompasses its component parts.

Here, Ridgecrest sent a demand letter to GPI on August 13, 2019, regarding the damage to the Chauvin Warehouse and stated that GPI is "liable not only for its own acts of destruction and damage but also for any of its sub-lessee's acts or behavior."[12] This letter illustrates that Ridgecrest was aware of the damages to the Chauvin Warehouse by this date. This letter also unequivocally put GPI on notice of the damage to the Chauvin Warehouse during the period of the lease. Additionally, the parties exchanged emails on August 23, 2019, further discussing the alleged damages to the Chauvin Warehouse and MWC's involvement.[13] Ridgecrest filed the instant suit on September 11, 2020, and GPI filed its Third-Party Complaint on November 9, 2020. Therefore, to the extent the Complaint or Third-Party Complaint makes a claim concerning the underlying tort, any such claim has prescribed because the complaints were filed more than one year after the parties became aware of the damage. However, as discussed below, the claims for tort indemnity have not prescribed.

GPI made two claims against MWC in its Third-Party Demand. The first claim is for contractual indemnity, while the second claim is for "tort indemnity" or implied indemnity by operation of law. Louisiana law recognizes that the prescriptive period for indemnity and contribution does not begin until the party entitled to indemnity or contribution has been cast in

---

[12] [Doc. No. 107-3]
[13] [Doc. No. 107-4]

judgment, paid a claim in settlement, or suffered a loss. *See Reggio v. ETI*, 2007-1433 (La. 12/12/08), 15 So.3d 951.

The Louisiana Supreme Court has addressed this issue in cases such as *Reggio v. ETI*, 2007-1433 (La. 12/12/08), 15 So.3d 951, where it explained that an action for indemnity is a separate substantive cause of action, arising at a different time and independent of the underlying tort. The accrual of the indemnity cause of action occurs when the indemnity claimant suffers the loss or damage, such as the payment of the underlying claim, a judgment, or a settlement. Therefore, GPI's claim for indemnity against MWC has not yet accrued, and prescription has not begun to run against the claim. *See Reggio*, 15 So.3d at 957–958.

Accordingly, under Louisiana law, a claim for tort indemnity is distinct from the underlying tort claim, and prescription does not commence until the party seeking indemnity has sustained a loss through payment, settlement, or an enforceable judgment. This principle is supported by other cases such as *Belanger v. Geico General Ins. Co.*, 623 F. App'x 684, n.14 (5th Cir. 2015), *Babin v. Planet Beach Tanning Salons, Inc.*, 2008-1350, *7 (La. Ct. App. 4th Cir. Mar. 25, 2009), and the Louisiana Practice Series: Civil Pretrial § 10:94 (2022). Therefore, GPI's claim against MWC for tort indemnity is a separate cause of action from any claim concerning the underlying tort and has not prescribed.

### III. CONCLUSION

For the reasons stated herein,

**IT IS ORDERED, ADJUGED, AND DECREED** that MWC's Motion for Partial Summary Judgment Seeking the Dismissal of any Tort Claim as Prescribed [Doc. No. 107] is **GRANTED**. Any claims regarding liability for the underlying tort set forth in the Complaint [Doc. No. 1] or Third-Party Complaint [Doc. No. 9] are **DISMISSED WITH PREJUDICE**. This judgment shall not affect any claim for tort indemnity.

MONROE, LOUISIANA, this 10th day of May, 2023.

                                                    Terry A. Doughty
                                                    United States District Judge